No. 47,130

KAKE-TV AND RADIO, INC., a Corporation, *Appellant*, v. CITY OF WICHITA, KANSAS, a Municipal Corporation; THE BOARD OF COMMISSIONERS THEREOF: GLENN J. SHANAHAN, Mayor; JACK H. GREENE; JAMES M. DONNELL; GARRY PORTER; and JOHN S. STEVENS; RALPH C. EBERLY, City Clerk, City of Wichita; and AIRCAPITAL CABLEVISION, INC., a Corporation, *Appellees*.

(516 P. 2d 929)

Opinion filed December 8, 1973.

*Charles E. Jones,* of Adams, Jones, Robinson and Malone, Chartered, of Wichita, argued the cause, and *Floyd E. Jensen,* of the same firm, was with him on the brief for the appellant.

*Robert C. Foulston,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *Rodney R. Hatter,* of the same firm, was with him on the brief for appellee AirCapital Cablevision, Inc.

*H. E. Jones,* of Wichita, argued the cause, and *John Dekker,* city attorney, was with him on the brief for appellees City of Wichita, Kansas, The Board of Commissioners and Ralph C. Eberly.

The opinion of the court was delivered by

FONTRON, J.: This is the third time that the City of Wichita's ongoing dispute over Cable TV (CATV) has appeared before this

court. The current action is brought under the declaratory judgment statute (K. S. A. 60-1701) to determine the validity of ordinance 32-325 amending a prior ordinance (30-413) and granting a franchise to AirCapital Cablevision, Inc. to operate a cable television system in Wichita. The trial court sustained a motion to dismiss the lawsuit and the plaintiff, KAKE-TV and Radio, Inc., has appealed.

In the course of this opinion we shall refer to the appellant as KAKE or plaintiff, to the appellees collectively as defendants, to the City of Wichita and its officers as Wichita or City, and to AirCapital Cablevision, Inc., as AirCapital.

It may prove helpful at this point to sketch briefly what transpired before. Wichita's cable TV experiences originated in the passage of ordinance 28-882 which purported to fix and define the terms, conditions and procedures under which a CATV system could be operated in that city. On June 13, 1970, this court declared ordinance 28-882 void in *Community Antenna TV of Wichita, Inc. v. City of Wichita,* 205 Kan. 537, 471 P. 2d 360, on the premise that cable television service was a commercial enterprise of non-public utility character.

While the appeal in that case was pending in this court, the city commission adopted ordinance 30-413, granting a franchise to AirCapital, which was the successful applicant among the four who bid for the franchise. AirCapital accepted the franchise in writing and, so we are told, filed with the city clerk a surety bond and liability insurance policy as required by the city, and there the matter rested for the time being.

After our opinion went down in the Community Antenna TV appeal the district court enjoined the enforcement of ordinance 28-882. The city thereafter repealed that ordinance but did not repeal ordinance 30-413. Instead the city placed on first and second readings an ordinance, referred to as "unnumbered", purporting to amend 30-413 and containing many, if not most, of the provisions contained in ordinance 28-882. Community Antenna TV thereupon initiated contempt proceedings against the city commissioners, which the court eventually dismissed. During those proceedings, however, the trial court entered an amended order declaring that parts of the proposed unnumbered new ordinance went beyond the city's power to enact and enjoining the city from enacting those sections. On the city's appeal from that order, this court did a bit of backtracking, after taking a look both at new legislation enacted

by the Kansas Legislature, and at new rules promulgated by the Federal Communications Commission. Upon examining the recent legislation and rules we receded from the position taken in the first Community Antenna TV appeal and acknowledged that the furnishing of cable television service was a private business affected with a sufficient public interest to require reasonable municipal regulation to prevent harmful consequences to the public interest. (*Community Antenna TV of Wichita v. City of Wichita,* 209 Kan. 191, 495 P. 2d 939.) We should mention that at the same term of court we decided *Capital Cable, Inc. v. City of Topeka,* 209 Kan. 152, 495 P. 2d 885, in which we also held that a CATV operation was a private business affected with such a public interest as to require city regulation.

For the second time the Wichita case was returned to its place of origin, where the city commission promptly introduced and passed ordinance 32-325 around which the present controversy swirls. The cast has changed a bit, with KAKE taking the plaintiff's role, and with new faces on the city commission. But the burden of the plaintiff's plaint has a familiar sound: The city ordinance, now 32-325, is void and its enforcement should be enjoined.

The petition filed by KAKE contains much of what we have set out as background; challenges the validity of the ordinance on several grounds; and alleges that AirCapital's operations under the ordinance would directly compete with plaintiff's business and cause it irreparable injury. The defendants filed a motion to dismiss and for summary judgment and the district court sustained the motion to dismiss. In so doing, the court found that ordinance 32-325, amending 30-413 which granted the franchise to AirCapital, was valid on its face; that the court was without authority to substitute its opinion for that of the Board of Commissioners of the City of Wichita or of the Federal Communications Commission; that plaintiff did not have such a peculiar interest in the subject matter of the litigation as to maintain this action; and that defendant's motion, so far as it sought summary judgment, was moot.

In our view, the all-important issue to be determined in this appeal is whether the plaintiff has sufficient status, or standing, to maintain the present lawsuit.

Before an action may be maintained under the declaratory judgment statute (K. S. A. 60-1701), an actual controversy must exist between the proper parties. (*Fairfax Drainage District v. City of*

540

*Kansas City,* 190 Kan. 308, 374 P. 2d 35.) The necessity of there being adverse contending parties before a justiciable controversy can exist was most recently given emphasis in *Johnson County Sports Authority v. Shanahan,* 210 Kan. 253, 499 P. 2d 1090, an action seeking to compel the secretary of state to correct an error in the final enrolled version of a house bill passed by the legislature, and to render a declaratory judgment construing the bill as corrected. In our opinion we said:

"We also think it important to emphasize that the declaratory relief sought is not appropriate in this case since there is no justiciable controversy between adverse parties. It is of course horn-book law that there must be at least two parties who can assert rights which have developed or will arise against each other before an actual controversy can exist which is justiciable under our declaratory judgment act. (Citing cases.) In this case the defendant secretary of state has no actual interest adverse to the plaintiff in the construction or the validity of House Bill 1715. Any interest she might have is purely academic. In a declaratory judgment action there should be suitable adverse parties so that all issues pertaining to the construction or validity of a statute may properly be raised to avoid multiplicity of litigation." (p. 259.)

KAKE is a radio and television broadcaster operating in Wichita and other areas of this state. Its principal broadcasting studio and facilities are berthed in Wichita. The company beams its programs over the public airways as opposed to the CATV system of capturing from the public airways the broadcasts of such companies as KAKE and others in that category. As we have said before, KAKE alleges that AirCapital's CATV operation will compete with and damage its business. Hence KAKE insists it has such a peculiar and particular interest in the subject matter of the litigation, different from that of citizens generally, as would permit it to maintain this action. The defendants challenge that position and thus the battle is joined.

All parties appear to be in agreement as to the general rule that the right to question the validity of a franchise is in the granting authority and that a franchise is not subject to collateral attack by a private party absent a showing that he has a special interest or suffers some peculiar injury distinct from that of citizens generally. (36 Am. Jur. 2d Franchises, § 20, p. 741; § 67, p. 797.) The rule which denies a third party the right to question the validity of a franchise ordinance is stated in 6 McQuillin, Mun Corp (3rd Ed.) § 20.20, p. 53:

"A taxpayer or citizen or any third party ordinarily cannot attack the

validity of an ordinance granting or relating to a franchise or privilege, at least where the ordinance has been accepted, acted upon, and become a contract. . . ."

In volume 12, § 34.84 of the same work at page 202 we find the rule further discussed:

"The validity of a franchise granted by a municipal corporation is not subject to collateral attack. Views have been expressed that, ordinarily, only parties having an interest in the subject matter of the franchise are entitled to complain of its grant, and, indeed, that one not a party to the franchise cannot question its validity. Ordinarily, the franchise cannot be attacked by one who does not claim an exclusive or concurrent right. Thus, if a grant is claimed to be invalid because exclusive, the only one who can raise the question is one claiming the right to do something contrary to such exclusive feature. Usually a taxpayer or an abutting owner cannot attack the validity of a franchise, at least unless he sustains some special injury because of it, or unless the right to test the validity of the franchise is granted to private persons by statute. . . ."

Kansas cases are in general accord. In the early case of *Mining and Gas Co. v. Gas and Mining Co.*, 55 Kan. 173, 40 Pac. 326, it was held that a company organized to supply gas to the city of Coffeyville, and authorized by ordinance to use the city streets for the purpose of laying its mains and pipes, had no standing in court to test the right of a rival company to use the streets for similar purposes or to question the validity of later ordinances under which the rival company was claiming. In the course of the opinion this court said that it seemed the only substantial purpose of the plaintiff in bringing the action was "to prevent the defendant from *competing with it* in supplying gas to the people of Coffeyville . . ." (Emphasis supplied.) (p. 181.)

The rationale underlying the gas company case was followed and applied in *Telephone Co. v. Telephone Association*, 94 Kan. 159, 146 Pac. 324. In this action the plaintiff corporation had held a franchise for several years authorizing it to use the streets and alleys of Baxter Springs for maintaining its cables, poles, wires and other pertinent equipment in providing telephone service to the residents of that city. At a later date the city passed another ordinance granting the defendant a franchise to operate a telephone exchange and to use the city streets and alleys for its business. The first franchisee sued to enjoin the second franchisee from constructing its lines. The petition alleged that plaintiff had a substantial investment in its business and that the construction of another

telephone system would cause the plaintiff great and irreparable injury and damage different in kind from that suffered by any other firm, person or corporation.

The trial court refused the injunction. This court, in upholding the lower court's judgment on appeal, said:

"Ordinarily the usurpation of a corporate privilege or public franchise can only be challenged by an action in the name of the state by its proper officer.

"In Kansas that proper officer would be the county attorney. (Gen. Stat. 1909, § 2226; *The State, ex rel. County Attorney, v. Eble*, 77 Kan. 179, 93 Pac. 803.) The attorney-general is likewise frequently called upon to challenge the exercise of some unauthorized corporate power. (Citing cases.)" (p. 162.)

The court then went on to say:

"A private plaintiff who is likely to be injured in some special manner or whose situation is peculiarly affected by the exercise of a usurped power could maintain the action, but no such case is presented here.

.    .    .    .    .    .    .    .    .    .    .    .

". . . [I]t does not appear that a mere rival in business has such an interest as will permit it to maintain an action of this character. . . ." (pp. 163, 165.)

KAKE cites a number of Kansas cases in which it was held permissible for a private individual or a corporation to question the validity of an ordinance. In most of those cases the ordinance involved was not one which granted a franchise but was one which was regulatory in character and directly affected the plaintiff bringing the action. We shall not attempt a complete analysis of all the cases cited by KAKE. Typical of most, however, are *Peoples Taxicab Co. v. City of Wichita*, 140 Kan. 129, 34 P. 2d 545, and *Home Cab Co. v. City of Wichita*, 140 Kan. 451, 36 P. 2d 1012, where the ordinance under consideration in both cases made provision for the regulation of taxicabs operated in Wichita, requiring them to be licensed, to carry liability insurance, to be equipped with sundry safety devices and to comply with additional regulations. The ordinance directly affected the business operations carried on by the two plaintiffs and the court held that each had standing to maintain injunctive proceedings.

Two other cases cited by KAKE deserve brief mention. In *Wichita Transportation Co. v. Peoples Taxicab Co.*, 140 Kan. 40, 34 P. 2d 550, the plaintiff brought an action, not to challenge an ordinance, but to enjoin the defendant from operating taxicabs in Wichita in violation of certain ordinances regulating their operation.

Under the circumstances shown, this court held the action could be maintained. The case is not in point here.

At first glance it might appear that *Gas Service Co. v. Consolidated Gas Utilities Corp.*, 145 Kan. 423, 428, 65 P. 2d 584, supports KAKE's position. The plaintiff corporation, itself a franchisee, sued in *quo warranto* seeking to oust the defendant from occupying certain streets and alleys under a franchise granted by the city. The defendant raised the question whether plaintiff had such an interest in the challenged franchise as would enable it to bring the action. This court gave an affirmative answer but it based its decision on the ground that the city, which undoubtedly could have brought the action itself, was made a party to the suit on its own motion and *on motion of the defendant;* that the city was thus in the action for all purposes; and that the defendant could not "now be heard to say that there [was] no proper party to the action." We consider the case as distinguishable.

So far as we can tell from the record the only claim made by KAKE to a special or particular interest in the subject matter of ordinance 32-325 which would distinguish its position from that of members of the general public is that of competition which it asserts would cause injury to its business and damage to its economic health. On the basis of our past decisions we regard this attempted distinction as insufficient to confer special status upon KAKE to challenge the subject ordinance. In a free society, business and industry operate on a competitive basis and great economic development has been attained in this country from a system which values fair and honest competition. The threat, or perhaps we might better say the challenge, of competition faces most American businesses and we would presume it is always close to those who make use of our busy airways.

The question of standing to maintain an action of this character under circumstances very similar to those of the instant case was recently before the New Mexico Supreme Court in *Hubbard Broadcasting, Inc. v. City of Albuquerque*, 82 N. M. 164, 477 P. 2d 602, and we find the court's reasoning in that case most persuasive. The action was one for a declaratory judgment adjudicating, hopefully, that the city of Albuquerque was without authority to grant a franchise to the defendant franchisee, General Communications and Entertainment Company, which would permit the use of city

streets and other public property in the operation of a cable television system. Hubbard claimed standing to sue based on competition, degradation of its signal transmitted on the cable system and, alternatively, loss of good will and "ghosting", by which is meant a dual picture resulting from the difference in speed of transmission between air and cable systems. The defendants contended there, as do the defendants here, that there was no justiciable controversy; that Hubbard had no standing to sue; and that the court had no jurisdiction.

In supplying a negative answer to the question "Does Hubbard have standing to maintain the action?" the New Mexico court quoted the following passage from *Ruidoso State Bank v. Brumlow,* 81 N. M. 379, 467 P. 2d 395:

" 'One whose only injury will result from lawful competition suffers no legal wrong. * * *

" 'The right to appellate review of a judgment or order exists only in one who is aggrieved or prejudiced thereby. * * Appeals are ordinarily not allowed for the purpose of settling abstract questions, however interesting or important to the public generally, but only to correct error injuriously affecting appellant. * * *

" ' * * * The true test is whether appellant's legal rights have been invaded, not merely whether he has suffered [or may suffer in the future] any actual pecuniary loss or been deprived of any actual pecuniary benefit. * * *' " (p. 165.)

Later in the *Hubbard* opinion the court said:

"One injured by competition authorized by a state instrumentality has no standing to maintain a suit for declaratory relief against such state instrumentality. Nantucket Boat Inc. v. Woods Hole, 345 Mass. 551, 188 N. E. 2d 476 (1963); 22 Am. Jur. 2d Declaratory Judgments, § 32 at 883.

". . . [T]he general rule is that economic injury from lawful competition cannot, in and of itself, confer standing to question the legality of any aspect of the competitor's operations. . . ." (p. 166.)

In its reply brief, plaintiff endeavors to distinguish the *Hubbard* case by stating that it did not involve the question of cross-ownership while it has been established here that one of KAKE's competitors, Kansas State Network Inc., owns a sizeable chunk of AirCapital stock. We have no way of knowing whether or not cross-ownership was involved in the *Hubbard* case and cannot assume that it was not. We doubt that the point is too material in any event in view of federal rules relating to cross-ownership. (37 Fed. Reg. p. 3290.)

An interesting situation, somewhat analogous to that with which we deal, was presented to the Utah Supreme Court in *Intermountain Electronics, Inc. v. Tintic School Dist.,* 14 Utah 2d 86, 377 P. 2d 783. The plaintiff, who was engaged in the field of cable television, had been granted a franchise to operate a CATV system in the town of Eureka, in the county of Juab. The defendant school district, acting under the authority of a Utah statute, contracted with TV Pix, Inc. to install, on a high peak in Juab County, a television translator, or booster station, which would receive, amplify and rebroadcast signals from originating television stations, making the signals available to people in the surrounding area, including the town of Eureka where the plaintiff had many paying customers.

Action was commenced by Intermountain Electronics, Inc., to restrain the installation of the translator station, it being alleged that plaintiff had made a substantial investment in installing its CATV system; that it had an exclusive franchise in Eureka and numerous contracts with local subscribers; and that valuable property rights would be destroyed and irreparable injury would ensue if the plan of the defendants was carried out. The Utah court was not impressed. It said:

"The fundamental question is whether the plaintiff asserts a valid basis for prohibiting the defendants from proceeding with the proposed project. To justify doing so, it is not sufficient that the plaintiff claim irreparable injury to its property, but there must be some actual or threatened violation of its rights by a wrongful act of the defendants. . . .

"The electro-magnetic waves existing in the space above the earth which carry these TV signals are of such a nature that they obviously cannot be reduced to physical possession like real or personal property, or be put to an exclusive beneficial use like water. It would therefore be quite unrealistic to consider that property rights could vest as in those instances. The right to use this signal-carrying capacity cannot properly be regarded as so possessed, nor maintained, by any one person to the exclusion of others, unless it is affirmatively so prescribed or regulated by law.

"In making the installation in the first place, the plaintiff must be deemed to have known that it could not arrogate to itself control of the atmosphere and prevent others who might desire to do so from also making use of it. . . ." (p. 88.)

There is other respectable authority to the effect that there are no special property rights in the national airways and that the activities of those concerns which furnish cable television services do not in and of themselves constitute unfair competition. (*Cable*

*Vision, Inc. v. KUTV, Inc.*, 335 F. 2d 348; *Herald Publishing Co. v. Florida Antennavision, Inc.*, 173 So. 2d 469 [Fla.].)

We are constrained to hold that there exists no justiciable controversy between the plaintiff and defendants sufficient to give the plaintiff standing to maintain the present action.

Our conclusions as to plaintiff's standing will dispose of this lawsuit even though the plaintiff has gone to considerable length in arguing against the validity of the franchise ordinance. Questions which go to the validity of ordinance 32-325 become moot once it is determined that KAKE lacked capacity or status to sue. However, it may not be inappropriate to note in closing that it appears, from statements made on oral argument that most, if not all of KAKE's complaints directed against the ordinance, have been repeated in objections which have been filed to AirCapital's application for a certificate of compliance (37 Fed. Reg. p. 3280) which is now pending before the Federal Communications Commission. We understand no hearing has yet been held on AirCapital's application and we are satisfied that KAKE's complaints will be well and fully aired at the hearing and will be given due attention.

The judgment of the court below is affirmed.