EVERETT TOWN TAXI, INC. & others *vs.* BOARD OF
ALDERMEN OF EVERETT & others.

Middlesex.    October 9, 1974. — December 23, 1974.

Present: REARDON, QUIRICO, HENNESSEY, & KAPLAN, JJ.

*Conflict of Interest.    Equity Pleading and Practice,* Parties.

Taxicab companies, operating in a regulated industry, were proper
parties to bring a suit in equity under G. L. c. 268A, § 21 (*a*), against
business competitors and officials alleging conflict of interest in
violation of c. 268A and seeking revocation of certain taxicab
licenses. [535-539]

BILL IN EQUITY filed in the Superior Court on December 1,
1972.

The suit was reported by *Rutledge,* J.

*Vincent Galvin* for the plaintiffs.

*Edward J. Bushell (John A. Brennan, Jr.,* with him) for
Leo J. Barrett, Henry F. Fitzgerald, & Hortense Fitzgerald,
individually, and Everett Courtesy Cab, Inc. & Union
Street Cab Co., Inc.

REARDON, J.    This case, reported by a judge of the
Superior Court to the Appeals Court, is here from that
court on order of transfer. The issue is presented by the
action of the trial judge in sustaining the defendants' plea
in bar to a bill of complaint and amendment thereto. The
bill was brought by corporations operating taxicab com-
panies in the city of Everett which are in competition with
certain corporations also operating taxicab companies in
that city. Joined as defendants were the latter corpo-
rations, the city of Everett, the individual members of the
board of aldermen of the city, one of whom was named as an
officer of the defendant corporations, and the chief of police
of Everett and his wife, also named as officers of one of the
defendant corporations. The plaintiffs' bill alleged viola-
tion of G. L. c. 268A, inserted by St. 1962, c. 779, § 1 (the
conflict of interest statute), and sought revocation of

licenses obtained by the defendant corporations from the Everett board of aldermen to operate taxicabs and taxi stands in Everett. The sole issue raised by the pleadings is whether the corporate plaintiffs are the proper parties to bring an action under G. L. c. 268A. The pertinent section reads as follows:[1]

"*Section* 21. (*a*) In addition to any other remedies provided by law, any violation of section two, three, eight, or sections fifteen to twenty, inclusive, which has substantially influenced the action taken by any municipal agency in any particular matter shall be grounds for avoiding, rescinding or cancelling the action on such terms as the interest of the municipality and innocent third persons require.

"(*b*) The city or town may bring a civil action against any person who has acted to his economic advantage in violation of said sections two, three, eight and fifteen to twenty, inclusive, and may recover damages in the amount of such economic advantage or five hundred dollars, whichever is greater. If there has been no final criminal judgment of conviction or acquittal of the same violation, the city or town may in the discretion of the court recover additional damages in an amount not exceeding twice the amount of the economic advantage or five hundred dollars, whichever is greater, and a judgment for such damages shall bar any criminal prosecution for the same violation."

The important question whether the civil remedy provided by § 21 (*a*) may be invoked by a private party as well as by a municipality has been before this court twice and in each instance we expressly reserved the question for later decision. *Moskow* v. *Boston Redevelopment Authy.* 349 Mass. 553, 571 (1965), cert. den. 382 U. S. 983 (1966). *Crall* v. *Leominster,* 362 Mass. 95, 106-107 (1972). Today we answer that question in the affirmative.

The language of § 21 (*a*) is neutral on the matter, simply setting out the remedy without describing those to whom it

---

[1] See also § 9, providing parallel remedies for actions by State agencies, and § 15, providing for actions by county agencies.

is available. At the least there is nothing in the language to preclude a private action; if anything, the specific reference to actions by the city or town for restitution in § 21 (*b*) leads to the inference that no such limitation is present in § 21 (*a*). We are impelled to this conclusion by our obligation to construe a legislative act so as to effectuate fully the statutory purpose. *Foley* v. *Lawrence,* 336 Mass. 60, 65 (1957). *New York Cent. R.R.* v. *New England Merchs. Natl. Bank,* 344 Mass. 709, 713 (1962). *United States Trust Co.* v. *Commonwealth,* 348 Mass. 378, 383 (1965). *Boston* v. *Massachusetts Port Authy.* 364 Mass. 639, 647 (1974). There can be no doubt about the purpose of this statute, enacted as part of "comprehensive legislation . . . [to] strike at corruption in public office, inequality of treatment of citizens and the use of public office for private gain." Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650, p. 18. See Buss, The Massachusetts Conflict-of-Interest Statute: An Analysis, 45 B. U. L. Rev. 297, 301-302 (1965). In light of these objectives it is apparent that, if a right of action is denied to all private parties, there would be a frustration of the statute. See *J. I. Case Co.* v. *Borak,* 377 U. S. 426, 433 (1964); *Allen* v. *State Bd. of Elections,* 393 U. S. 544, 556-557 (1969). Cf. *Commonwealth* v. *Haddad,* 364 Mass. 795, 799 (1974). Compare *National R.R. Passenger Corp.* v. *National Assn. of R.R. Passengers,* 414 U. S. 453 (1974). Were we to construe § 21 (*a*) as providing an exclusively public remedy so that the sole parties eligible to move under § 21 (*a*) were municipal authorities, the result would be that in a municipality where those authorities were the principal parties in interest there would be no movement at all. Thus to deny a private right of action under the statute would in some cases be to deprive the public of the protection conferred on it by the Legislature.

Examination of the legislative history confirms the view that the Legislature did not intend so to limit § 21 (*a*). The conflict of interest statute was the product of extensive study and proposals by a Special Commission on Code of Ethics. 1962 House Doc. No. 3650. In drafting the legisla-

tion the commission consciously chose as its model the Federal conflict of interest provisions proposed by H. R. 8140, 87th Cong., 1st Sess. (1961), subsequently enacted as 18 U. S. C. §§ 201-218 (1970). See 1962 House Doc. No. 3650, p. 8. Significantly, the Federal provisions allowing rescission of governmental action taken in violation of the conflict of interest rules expressly named the President and agency heads as the proper parties to invoke the remedy. 18 U. S. C. § 218 (1970). In addition, the special commission had before it a model statute drafted by the Association of the Bar of the City of New York (special committee on the Federal conflict of interest laws, "Conflict of Interest and Federal Service" [1960]), and two bills filed in the Legislature in 1961 (Senate Nos. 54 and 492). See Braucher (now Justice Braucher), Conflict of Interest in Massachusetts, in Perspectives of Law, Essays for Austin Wakeman Scott, 4-5 (1964). Each of these statutes, like the Federal statute, provided for rescission of the governmental action only at the instance of specified public officials. By contrast the commission's proposal, which was adopted by the Legislature, contained the present language of § 21 (*a*), devoid of any reference to specific officials authorized to invoke the remedy. This background leads to a very strong inference that the legislative intent was to broaden the remedy to include private as well as public actions. Compare *National R.R. Passenger Corp.* v. *National Assn. of R.R. Passengers,* 414 U. S. 453, 458-461 (1974).

In reaching this conclusion we emphasize that rescission of governmental action pursuant to § 21 (*a*) is not an automatic proposition; rather it must be "on such terms as the interest of the municipality and innocent third persons require." G. L. c. 268A, § 21 (*a*). See Braucher, Conflict of Interest in Massachusetts, *supra,* at 34-35. For example, in a suit by a private citizen, the fact that the municipal authorities were aware of the conflict of interest but chose to ratify the action may be entitled to some weight where the action cannot be rescinded without detriment to the municipality. Compare *Sylvester* v. *Webb,* 179 Mass. 236, 241 (1901), with *Barrett* v. *Medford,* 254 Mass. 384, 387

(1926), and *Albano* v. *Selectmen of South Hadley,* 341
Mass. 494, 496-497 (1960). Likewise the possibly harsh
effect of rescission on innocent third parties who dealt with
the municipality should be considered. See Massachusetts
Legislative Research Council Report Relative to Conflict of
Interest, 1961 Senate Doc. No. 650, p. 22; Manning, Federal
Conflict of Interest Law, 270-271 (1964). But see *United
States* v. *Mississippi Valley Generating Co.* 364 U. S. 520,
565 (1961). In so stating we express no view on the merits of
the plaintiffs' action in the instant case.

It remains to consider whether these particular plain-
tiffs, business competitors of the defendant corporations,
have standing to invoke the private remedy which we have
concluded is provided by § 21 (*a*). As a general rule the
mere fact that a plaintiff may suffer from business com-
petition is not a sufficient injury to give him standing to
sue. *Circle Lounge & Grille, Inc.* v. *Board of Appeal of
Boston,* 324 Mass. 427, 429 (1949). *Colantuoni* v. *Selectmen
of Belmont,* 326 Mass. 778, 779-780 (1951). *Springfield
Hotel Assn. Inc.* v. *Alcoholic Beverages Control Commn.*
338 Mass. 699, 703 (1959). This rule does not apply,
however, to competitors in a regulated industry such as the
one here[2] who are attempting to challenge governmental
action threatening their competitive position. *A. B. & C.
Motor Transp. Co. Inc.* vs. *Department of Pub. Util.* 327
Mass. 550, 551-552 (1951). *Bay State Harness Horse Racing
& Breeding Assn. Inc.* v. *State Racing Commn.* 342 Mass.
694, 702 (1961). *South Shore Natl. Bank* v. *Board of Bank
Incorporation,* 351 Mass. 363, 367 (1966). Furthermore, the
plaintiffs bring this suit under a statute designed to protect
interests which we believe include those asserted by them.
This is not to say that the conflict of interest provisions
were aimed at protecting private parties from legitimate
competition. But the expressed goal of guarding against
"inequality of treatment of citizens," discussed above, does

---

[2] Pursuant to G. L. c. 40, § 22, municipalities may regulate taxicabs operating
within their boundaries through conditional licenses and by designation of
specific cab stands according to public convenience. *Morley* v. *Police Commr. of
Boston,* 261 Mass. 269 (1927), cert. den. 276 U. S. 625 (1928).

indicate that competitors of those receiving favored treatment ought to be within the class of persons protected and thereby have standing to sue under the statute. See *Hardin* v. *Kentucky Util. Co.* 390 U. S. 1, 6-7 (1968); *Association of Data Processing Serv. Organizations, Inc.* v. *Camp,* 397 U. S. 150, 153 (1970); *Westland Housing Corp.* v. *Commissioner of Ins.* 352 Mass. 374, 383-384 (1967), and cases cited. In fact it may well be that parties such as the plaintiffs have the greatest incentive to uncover conflicts of interest and bring suit under § 21 (*a*) to enforce the statute. See *Federal Communications Commn.* v. *Sanders Bros. Radio Station,* 309 U. S. 470, 477 (1940). It follows from this that the defendants' plea in bar should not have been sustained.

*Decree of the Superior Court reversed.*