**UTAH BANKERS ASSOCIATION,
Petitioner,**

v.

**UTAH DEPARTMENT OF FINANCIAL
INSTITUTIONS, Respondent,**

Credit Union Service Centers
of Utah, Inc., Intervenor.

No. 930803–CA.

Court of Appeals of Utah.

Dec. 30, 1994.

Before Judges Billings, Greenwood, and Jackson.

## OPINION

JACKSON, Judge:

Utah Bankers Association (UBA) challenges the approval of an order of the Commissioner of Financial Institutions (the Commissioner) approving an application of the Credit Union Service Centers of Utah, Inc. (CUSC) to operate a "credit union service center" on behalf of several Utah credit unions. We affirm.

## FACTS

On June 25, 1993, CUSC [1] filed "An Application to Provide Service Center Services for Credit Unions in Utah" (application) with the Department of Financial Institutions (DFI). The application sought to allow CUSC to operate service centers for credit unions as consumer funds transfer facilities, to participate in regional or national networks for performing financial transactions, to accept and process loan applications for and on behalf of participating credit unions, and to conduct services authorized for credit unions pursuant to Utah Code Ann. § 7-9-5(29) (Supp.1994). The service center would be like a "shared branch," that is, any member of any credit union authorized to use the service center could go into the service center and receive the same services that a member could receive at a branch office of the member's own credit union.

The application was accepted as complete by DFI on August 23, 1993. Pursuant to statute, the Commissioner referred the application to the supervisor of credit unions at DFI to make a "careful investigation" and then submit findings and recommendations to the Commissioner. Utah Code Ann. § 7-1-208 (Supp.1994). The supervisor of credit unions made the finding that the CUSC could legally operate as a shared branch of all fifteen participating credit unions. The Commissioner then sent out a notice of hear-

Don B. Allen, Herschel J. Saperstein (argued), and Kevin G. Glade, Ray, Quinney & Nebeker, Salt Lake City, for petitioner.

Bryce H. Pettey, Asst. Atty. Gen. (argued) and Jan Graham, State Atty. Gen., Tax & Revenue Div., Salt Lake City, for respondent Tax Div.

Bruce L. Richards (argued), Bruce L. Richards & Associates, and Robert R. Wallace, Hanson, Epperson & Smith, P.C., Salt Lake City, for intervenor Credit Union Service Centers.

1. CUSC is owned by fifteen credit unions with their home offices in Utah. Eight of the credit unions have members from more than one county.

ing to be held on October 20, 1993, concerning the CUSC application. On August 27, 1993, UBA, a trade association representing commercial banks in Utah, filed an action in the third district court seeking declaratory and injunctive relief.[2]

On October 19, 1993, UBA filed comments and a protest in the formal adjudicative hearing before the Commissioner, claiming the hearing was invalid and contrary to law, service centers could not provide personnel-operated facilities, and service centers would constitute branches outside the participating credit unions' field of membership.[3] A one-day hearing was held on the CUSC application on October 20, 1993. CUSC called and examined witnesses and presented evidence in support of the CUSC application. UBA presented its case in opposition to the application. Both sides filed written memorandum in support of their positions and on November 19, 1993, the Commissioner approved the application. UBA then filed a petition to stay the order approving the application, which was denied by the Commissioner.

2. The trial court dismissed the action, finding that UBA had no standing to pursue the claims. UBA appealed the decision to the Utah Supreme Court. *Utah Bankers Ass'n v. America First Credit Union*, No. 940240248 (May 6, 1994).

3. A person may become a member of a credit union if, among other requirements, he or she is "within the limited field of membership" of that credit union. Utah Code Ann. § 7–9–16 (1988). Originally, a credit union's field of membership was strictly associational, there being a common employer or common profession. However, in 1981, Utah law for the first time allowed credit unions chartered by Utah to include geographical areas in their fields of membership. The definition of "limited field of membership" was broadened to include persons who "reside within an identifiable neighborhood, community, rural district, or county." Utah Code Ann. § 7–9–3(5)(b) (1988). A credit union defines its field of membership in its bylaws. Utah Code Ann. § 7–9–12(3) (1988). Amendments to the field of membership must be approved by the Commissioner. Utah Code Ann. § 7–9–11(2) (1988). On September 9, 1983, the Commissioner approved the policy of allowing credit unions to have a geographic field of membership consisting of more than one county.

4. Besides the alleged statutory violations addressed later in this opinion, UBA also asserts

## ISSUES

The issues raised by this appeal include: (1) whether UBA has standing to challenge the Commissioner's approval of the CUSC application, and (2) whether the Commissioner properly approved the CUSC application.[4]

## ANALYSIS

### Standing

■ ■ The respondent asserts that UBA lacks standing to challenge the Commissioner's position on geographic fields of membership containing more than one county. The issue of standing is a legal question which we review for correctness. *Aldrich, Nelson, Weight & Esplin v. Department of Employment Sec.*, 878 P.2d 1191, 1194 (Utah App. 1994). Standing "operates as a gatekeeper to the courthouse, allowing in only those cases that are fit for judicial resolution." *Terracor v. Utah Bd. of State Lands*, 716 P.2d 796, 798–99 (Utah 1986).[5]

■ ■ An association may bring an action on behalf of its members. *Society of Profes-*

that the approval of the application violates Utah Code Ann. § 7–9–3(5) (1988), which defines "limited field of membership" for credit unions. However, we need not consider this geographic limitation requirement to decide the issues properly before this court. Further, we do not consider whether the Commissioner's policy concerning fields of membership exceeds statutory authority. The CUSC does not have a field of membership and memberships will not be solicited through the CUSC. It is merely designed to act as a service center. The membership relationship between the member and the credit union is created at the credit union and exists independent of whether a member performs financial transactions at a service center. Further, the field of membership issues were raised in the separate civil action, *Utah Bankers Ass'n v. America First Credit Union*, No. 940240248 (May 6, 1994), now pending before the Utah Supreme Court. Thus, UBA's claims concerning the field of membership statute are not applicable to this appeal.

5. UBA also asserts that because it was involved in the proceedings below it should have standing to pursue this petition for appeal. However, mere participation is not enough to confer standing; a party must meet the traditional standing requirements. *See Sierra Club v. Department of Envtl. Quality*, 857 P.2d 982, 985 (Utah App. 1993).

*sional Journalists v. Bullock*, 743 P.2d 1166, 1175 (Utah 1987); *see Sierra Club v. Department of Envtl. Quality*, 857 P.2d 982, 986 n. 8 (Utah App.1993). However, the association must show that "the individual members of the association have standing to sue" and that "the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to the proper resolution of the cause." *Bullock*, 743 P.2d at 1175.

■■■ We believe that UBA members have individual standing to bring this action. First, UBA members can show injury. An aggrieved party in an administrative setting has standing if it can demonstrate some distinct and palpable injury that gives the party a personal stake in the outcome of the legal dispute. *Aldrich*, 878 P.2d at 1194; *see Terracor*, 716 P.2d at 799; *Jenkins v. Swan*, 675 P.2d 1145, 1150 (Utah 1983).[6]

UBA asserts that it has standing to bring the appeal because it will be injured by the Commissioner's decision which will "permit the participating credit unions to use the CUSC to solicit memberships in violation of the field of membership statutes or to otherwise engage in activities not permitted by the statutes permitting such service organizations." The UBA asserts that the Commissioner's decision "has and will result in competitive and economic injury to Utah banks." "Normally, an injury derived from business competition is not sufficient to confer standing." *Massachusetts Ass'n of Indep. Ins. Agents and Brokers, Inc. v. Commissioner of Ins.*, 373 Mass. 290, 367 N.E.2d 796, 800

(1977); *accord KAKE–TV and Radio, Inc., v. City of Wichita*, 213 Kan. 537, 516 P.2d 929, 934 (1973). "This rule does not apply, however, to competitors in a regulated industry ... who are attempting to challenge governmental action threatening their competitive position." *Massachusetts*, 373 Mass. 290, 367 N.E.2d at 800 (quoting *Everett Town Taxi, Inc. v. Board of Aldermen*, 366 Mass. 534, 538, 320 N.E.2d 896, 900 (1974). In the case of the banking and credit union industries, it is well established that these industries are subject to a large degree of legislative regulation and that the power exists to establish reasonable regulation in the public interest.

Second, the members of the UBA are not indispensable parties in this action. Neither the objections made by the UBA nor the relief it seeks with respect to the CUSC application requires individual participation by UBA members. The objections of the UBA do not turn on the unique circumstances of any one bank and the relief sought is not intended to benefit one bank more than another. Accordingly, we conclude that the UBA has standing to bring this action.

### Approval of Application

■■■ The UBA challenges the Commissioner's approval of the CUSC application for a shared service center. Shared service centers are not specifically named in the Utah Code. However, joint facilities are authorized by Utah Code Ann. § 7–1–303 (1988). Section 7–1–303 provides:

---

6. An individual party can show standing if it can establish that it was injured by the action, it is the most appropriate plaintiff to bring the action, or it raises issues of such public importance that they ought to be decided in furtherance of the public interest. *National Parks and Conservation Ass'n v. Board of State Lands*, 869 P.2d 909, 913 (Utah 1993). UBA asserts in its brief that the trial court in the related action of *Utah Bankers Ass'n v. America First Credit Union*, improperly interpreted the standing test and "blended the second and third independent grounds for standing. Rather than acknowledging standing on the grounds that no other party would seek compliance ... the district court stated that in such instances the party must also convince the court that the issue is of public importance, thereby satisfying the third basis for standing set forth in

Utah law." UBA asserts that there are three independent grounds for standing. Indeed, some recent cases suggest that there are three separate tests. For example, in *National Parks*, 869 P.2d at 913 (Utah 1993) and in *Terracor*, 716 P.2d at 799, the supreme court states the three tests as independent inquiries. However, in *Jenkins*, 675 P.2d at 1150, the supreme court states that "[t]he absence of a more appropriate plaintiff will not automatically justify granting standing to a particular plaintiff. This Court must still determine, on a case-by-case basis, that the issues are of sufficient weight."

Because we find that UBA has standing by meeting the injury prong of the standing test, we need not attempt to resolve this apparent conflict.

The commissioner may [7] authorize institutions subject to the jurisdiction of the department to engage in such joint and cooperative actions as the commissioner finds will be in the public interest such as, but not limited to:

. . . . .

(2) Joint use of facilities.

Because joint use of facilities necessarily contemplates sharing, section 7–1–303 appears on its face to be adequate authority for the Commissioner to approve shared service centers.[8]

Pursuant to section 7–1–303, in order to approve the application, the Commissioner had to find that the operation of the facility would be in the public interest. The Commissioner found:

> CUSC has presented uncontroverted evidence that participation in service centers will enhance the convenience and availability of credit union services to credit union members.... In keeping with Utah's desire to be on the forefront of technology utilization, service centers present an undeniable opportunity for all financial institutions. Credit union service centers are in the best interest of the public.

Based upon the evidence in the record, we conclude that the Commissioner's finding that the service center would be in the best interest of the public was supported by substantial evidence. *See* Utah Code Ann. § 63–46b–16(4)(g); *Kennecott Corp. v. State Tax Comm'n,* 858 P.2d 1381, 1385 (Utah 1993); *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 67 (Utah App.1989). Thus, we cannot say the Commissioner abused the discretion granted by section 7–1–303 in approving the application.

██ The application also requests approval of the CUSC as a system for automated and electronic transfer of funds. UBA asserts that the approval of the application violates Utah Code Ann. § 7–9–5(29) (Supp. 1994). This section provides that a credit union may "participate in systems which allow the transfer, withdrawal, or deposit of funds of credit union or credit union members by automated or electronic means." *Id.* UBA asserts that this section limits services that may be provided by credit union service organizations to "services among the participants through automated or electronic means."

We do not agree. Section 7–9–5(29) does not say that the activities listed thereunder are the only activities in which a credit union may participate and there is no reason to assume such a limitation. Further, the DFI's rule related to credit union service organizations defines a credit union service organization as

> an organization which provides any of the following services to its stockholder credit unions:
>
> (1) Data processing services;
>
> (2) Promotion, marketing and general management support services;
>
> (3) Access to sophisticated accounting systems;
>
> . . . . .
>
> (8) Automated teller machine services;
>
> . . . . .
>
> (11) Other services that are commonly associated with the routine operations of the credit unions.

Department of Financial Institutions, Rule R337–4–2. This rule allows credit union service organizations to provide, among other services, routine operations of a credit union.

7. The word "may" used in this statute suggests that the Commissioner has discretion in determining whether to authorize institutions to participate in the joint use of facilities.

8. We also agree that the Commissioner has jurisdiction over the CUSC. Utah Code Ann. § 7–1–501 (1988) provides that "all service corporations" are under the Commissioner's jurisdiction. "Service Corporation" is synonymous with service organizations. In fact, section 7–1–501 was amended in 1994 to include "service organizations." A service corporation is defined as a "corporation or other business entity owned or controlled by one or more financial institutions which is engaged or proposes to engage in business activities related to the business of financial institutions." Utah Code Ann. § 7–1–103(34) (1988). We believe that the CUSC fits this definition. Similarly, section 7–1–103(34) was amended in 1994 to include service organizations within the definition.

Routine operations include, among other operations, deposits, withdrawals, and loans. The services outlined in this rule include additional services not mentioned in section 7–9–5(29). Thus, we conclude the Commissioner's approval of the CUSC application did not violate section 7–9–5(29).

In summary, we conclude that UBA has standing to challenge the approval of the CUSC application. On the merits, our examination of UBA's challenge shows that the Commissioner properly approved the CUSC application.[9]

BILLINGS and GREENWOOD, JJ., concur.

**9.** We have examined UBA's claim that the Commissioner incorrectly applied the statutory definitions of "branch" and "consumer funds transfer facility" and find it to be without merit. Thus, we do not address it here. *See State v. Carter,* 776 P.2d 886, 896 (Utah 1989) (court may decline to address arguments without merit on appeal).