The UTAH BANKERS ASSOCIATION, a Utah nonprofit corporation, Plaintiff and Appellant,

v.

AMERICA FIRST CREDIT UNION, Goldenwest Credit Union, Ogden Government Credit Union, Beehive Credit Union, USU Community Credit Union, Credit Union Service Centers of Utah, Inc., a Utah corporation, Mountain America Credit Union, Granite Credit Union, Utah Central Credit Union, Cyprus Credit Union, Jordan Credit Union, Salt Lake City Credit Union, Metrowest Credit Union, Salt Lake City Firemen's Credit Union, Deseret First Credit Union, Transwest Credit Union, Chevronwest Credit Union, Hercules Credit Union, G. Edward Leary, as Utah Commissioner of Financial Institutions, and Doe Credit Unions 1–99, Defendants and Appellees.

No. 940248.

Supreme Court of Utah.

Feb. 28, 1996.

Don B. Allen, Herschel J. Saperstein, Kevin Glade, Salt Lake City, for plaintiff.

Robert R. Wallace, Salt Lake City, Bruce L. Richards, Sara D. Nelson, for defendant Credit Unions.

Jan Graham, Att'y Gen., Bryce H. Pettey, Asst. Att'y Gen., Salt Lake City, for Commissioner of Financial Institutions.

HOWE, Justice:

Plaintiff Utah Bankers Association (UBA) appeals from the trial court's summary judgment dismissing its action against defendants, who are a number of Utah credit unions, Credit Union Service Centers of Utah, Inc., and G. Edward Leary, Utah Commissioner of Financial Institutions.

UBA's action is based upon part of the Utah Credit Union Act which authorizes the Commissioner of Financial Institutions to approve the formation of nonprofit corporations to conduct credit unions.[1] Utah Code Ann. § 7–9–6(1). Under the Act, applicants may form a corporation if they belong to a "group of 200 persons or more" having a geographic or associational "limited field of membership." *Id.* The Act defines a geographic limited field of membership as a group of persons who "reside within an identifiable neighborhood, community, rural district, or county," *id.* § 7–9–3(5)(b), and an association-al limited field of membership as a group of persons who belong to a formal association or work for the same employer. *Id.* § 7–9–3(5)(a), (c)–(f). Approximately twelve years ago, Elaine B. Weis, who was then the Commissioner, adopted a policy of authorizing credit unions with geographic limited fields of membership to expand to include members from more than one county. Since then, at least fourteen credit unions have expanded their fields of membership under this policy, and several have included members from every county in the state.[2]

UBA filed this lawsuit on behalf of its member banks against defendants, seeking declaratory relief in the form of a statutory interpretation of sections 7–9–3 and –6 of the Act which would limit credit union membership to the residents of one county.[3] It also sought a permanent injunction ordering each defendant credit union to select one county as its "limited field of membership," to cease soliciting members outside the selected county, and to terminate the membership of those not residing within the county. However, the trial court did not reach the merits of this case because it determined that UBA lacked standing to bring this action and that laches and estoppel barred its complaint. Defendants were therefore awarded summary judgment. UBA appeals.

## I. STANDING

■■■ Because the parties do not dispute issues of material fact, we review the sum-

---

1. Unlike banks, which are for-profit corporations owned by stockholders, credit unions are nonprofit corporations owned by depositors. *See* Utah Code Ann. § 7–9–2. Technically, a depositor does not deposit funds into a credit union but purchases shares in the corporation. Because of their nonprofit status, credit unions are exempt from federal and state taxation on their profits. 26 U.S.C. § 501(c)(14)(A); Utah Code Ann. § 7–9–34. However, they are subject to property, sales, and use taxation. Utah Code Ann. § 7–9–34. Banks, on the other hand, are subject to all types of taxation, including taxation on their profits.

2. Credit unions that have accepted members from every county include America First Credit Union, Goldenwest Credit Union, Odgen Government Credit Union, Beehive State Employees Credit Union, Mountain America Credit Union, Granite Credit Union, Utah Central Credit Union, TransWest Credit Union, and Hercules Cred-

it Union. Others that have expanded their fields of membership under the policy include USU Community Credit Union, Cyprus Credit Union, Jordan Credit Union, Salt Lake City Credit Union, and MetroWest Credit Union.

3. UBA also sought a statutory interpretation that would prohibit the Commissioner from approving the Service Center's application to form a network for "shared intercounty branching" among the participating credit unions. However, before the trial court ruled on this issue, the Commissioner issued an order approving the Service Center's application, and the UBA sought judicial review of the order by the court of appeals. The court affirmed the order, holding that the Commissioner's action was supported by substantial evidence and did not violate any applicable statutes. *Utah Bankers Ass'n v. Utah Dep't of Fin. Insts.*, 888 P.2d 714, 718–19 (Utah Ct.App. 1994). Thus, that issue is not before this court.

mary judgment for correctness, according no deference to the trial court's decision. *CIG Exploration, Inc. v. Utah State Tax Comm'n*, 897 P.2d 1214, 1215 (Utah 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 699, 133 L.Ed.2d 656 (1996). We initially note that the requirement of standing is equally applicable to UBA's claims for both declaratory and injunctive relief. *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983). An association has standing for both of these claims where (1) the individual members of the association have standing to sue, and (2) the individual participation of each injured party is not indispensable to the proper resolution of the case. *Utah Restaurant Ass'n v. Davis County Bd. of Health*, 709 P.2d 1159, 1163 (Utah 1985). We examine the two components separately.

■ In determining whether the individual members of UBA have standing, we recognize that they must have "suffered some distinct and palpable injury that gives [them] a personal stake in the outcome of the legal dispute." *Jenkins*, 675 P.2d at 1148. Although a complainant generally cannot make this showing merely by demonstrating that he may suffer from business competition, *see Terracor v. Utah Bd. of State Lands & Forestry*, 716 P.2d 796, 800 (Utah 1986), this rule does not apply to competitors in a regulated industry which challenge agency action threatening their competitive position. *Utah Bankers Ass'n v. Utah Dep't of Fin. Insts.*, 888 P.2d 714, 717 (Utah Ct.App.1994); *Everett Town Taxi, Inc. v. Board of Aldermen*, 366 Mass. 534, 320 N.E.2d 896, 899 (1974); *Bank of Belton v. State Banking Bd.*, 554 S.W.2d 451, 453 (Mo.Ct.App.1977); *Dairylea Coop., Inc. v. Walkley*, 38 N.Y.2d 6, 377 N.Y.S.2d 451, 454–56, 339 N.E.2d 865, 868–69 (1975).

■ Utah financial institutions clearly qualify as a regulated industry. Title 7 of the Utah Code, entitled "Financial Institutions," is the umbrella title for the Utah Credit Union Act. The title empowers the Department of Financial Institutions with supervisory authority over "all classes of institutions" including banks and credit unions. Utah Code Ann. § 7–1–102(1)(a). The Commissioner has the power to profoundly affect competition between various institutions through his authority to supervise the operation and management of institutions, authorize the expansion of the rights, privileges, and benefits of institutions, and establish criteria for the approval of new institutions. *Id.* § 7–1–301(2), (3), (5). Because UBA members are completely subject to this scheme, we conclude that they cannot be denied standing to challenge an alleged injurious action by the Commissioner.

■ As defendants point out, however, a competitor in a regulated industry cannot prove palpable injury solely by alleging competitive disadvantage. It must also show that the alleged injury is within the scope of statutory concerns and is "inconsistent with the aims and purposes of the entire regulatory scheme." *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins.*, 373 Mass. 290, 367 N.E.2d 796, 800 (1977). As indicated above, the scope of title 7 includes the regulation of all "persons, firms, corporations, associations, and other business entities furnishing financial services to the people of this state or owning and controlling those businesses." Utah Code Ann. § 7–1–102(1)(a). More specifically, it contemplates the expansion, modification, and deletion of institutions' "rights, powers, privileges, benefits, or immunities." *Id.* § 7–1–301(3). Clearly, therefore, UBA's challenge to the Commissioner's policy is within the scope of statutory concerns because the policy implements guidelines for the expansion of credit unions' rights to recruit members.

In addition, UBA's alleged injury of unfair competition is inconsistent with the purposes of the regulatory scheme. One of the main purposes of title 7 is to "grant powers, privileges, and immunities to state chartered institutions at least equal to those possessed by federally chartered or insured institutions of the same class furnishing financial services to the people of this state *in order to promote competitive equality* in the financial services industry in this state." *Id.* § 7–1–102(1)(a) (emphasis added). We infer from this language that the legislature intended to promote competitive equality among state financial institutions as well as between federal

and state institutions. As the Virginia Supreme Court stated in interpreting part of Virginia's financial regulatory scheme, "[C]ompetition in the financial market is constructive and productive; it can sometimes be destructive and unfair, and the public has a substantial interest in protecting *all* certified financial institutions against ruinous competition." *Front Royal Savings & Loan Ass'n v. First Virginia Bank,* 222 Va. 194, 278 S.E.2d 853, 856 (1981) (emphasis added). Also, the legislature has provided specific guidelines on credit union formation in the Act, *see* Utah Code Ann. §§ 7–9–3(5), –6, and this Act was adopted as part of the overall scheme for competitive quality among financial institutions. Thus, the Commissioner's alleged violation of these guidelines is inconsistent with the purposes of the regulatory scheme.

■ We next consider whether the individual participation of each member bank is necessary to the proper resolution of this case. We conclude that each member's interest in fair competition under the regulatory scheme would be adequately protected by UBA's claims because their competitive interests are similar. Furthermore, because UBA's claims for declaratory and injunctive relief would not need to be tailored to the needs of each individual member, we cannot find that individual participation would improve the relief available to the members. *See Utah Restaurant Ass'n,* 709 P.2d at 1163 (examining extent of benefit to each member and degree of protection required by each member in determining whether individual participation of each member is indispensable).

■ Defendants contend that UBA does not have standing because the Commissioner's policy permitting credit union expansion has been in place for more than twelve years and has become too deeply integrated into the regulatory scheme to be challenged by disgruntled competitors. Citing *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970), defendants assert that "one who has an interest in freedom from competition has standing to challenge new competition" only, not competition which

has been relied upon by the industry and implemented into the regulatory system. We reject this argument. Such a precedent would force us to make an unavoidably obscure distinction between "new" and "old" agency action. Under such a precedent, an agency would face judicial review of "new" policies but not "old" policies, and our research reveals no support for allowing an agency to perpetually violate a statute simply because the agency action was not challenged before it became "old." *See Enfield v. Kleppe,* 566 F.2d 1139, 1142 (10th Cir.1977) (explaining that "[t]he length of time that [a] faulty regulation [is] on the books is of no consequence because an administrative provision contrary to statute must be overturned 'no matter how well settled and how long standing'" (quoting *Wilderness Soc'y v. Morton,* 479 F.2d 842, 865 (D.C.Cir.1972), *cert. denied,* 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973))).

We do not read *Data Processing Service* as distinguishing between "new" and "old" policies. The only instance where the United States Supreme Court referred to "new" competition in that case was where it cited another case involving "a newcomer into [a regulated] business" and the competitor's status as a newcomer was not a dispositive factor. 397 U.S. at 154, 90 S.Ct. at 830 (citing *Chicago v. Atchison, Topeka, & Santa Fe R.R.,* 357 U.S. 77, 83–84, 78 S.Ct. 1063, 1066–67, 2 L.Ed.2d 1174 (1958)). Thus, *Data Processing Service* does not support defendants' argument.

Defendants also argue that UBA's members do not have standing because (1) UBA has not shown that any of its members lost customers to credit unions because of the Commissioner's policy, (2) some of the members have actually benefited from the Commissioner's credit union expansion policy by selling their branch facilities to one of the defendant credit unions, and (3) even if credit unions with geographic limited fields of membership were limited to one county, UBA's members would not experience a competitive advantage because they would still face competition from credit unions on the county level, credit unions with associational rather than geographic fields of membership, and

credit unions with geographic limited fields of membership expanded through merger. These arguments are without merit. UBA has already demonstrated that it has standing by alleging a violation of the statutory rights of its members. Because the competitive injury alleged is within the scope of statutory concerns, we believe that UBA has shown sufficient injury to establish standing. *See Massachusetts Ass'n of Indep. Ins. Agents,* 367 N.E.2d at 800. Thus, we need not search further for palpable injury. We conclude that UBA has standing to bring this action.

## II. EXHAUSTION OF REMEDIES

■ Defendants also contend that this court lacks jurisdiction to hear this case because UBA failed to exhaust its administrative remedies before filing this action. They point out that under subsection 7–1–714(3) of the Utah Code, "Any action for judicial review of acts or failures to act of the commissioner shall be heard by the court and shall be based on the record made before the department." Because this provision refers to an agency record, they argue, judicial review is not possible until UBA participates in an adjudication process at the agency level.

■ In examining sections of the Utah Code, we are guided by the principle that the provisions of a statute must be interpreted in light of the statute as a whole, not in a piecemeal fashion. *Berrett v. Purser & Edwards,* 876 P.2d 367, 369 (Utah 1994); *Morton Int'l, Inc. v. Auditing Div.,* 814 P.2d 581, 591 (Utah 1991). In the same section cited by defendants, the legislature has provided, "Any person aggrieved by any rule, regulation, order, decision, or ruling or other act or failure to act of the commissioner under this title is entitled to judicial review." Utah Code Ann. § 7–1–714(1). Because some of these actions do not involve adjudicatory proceedings or formal record making, we conclude that judicial review is not precluded by the lack of such preliminaries. Rather, judicial review is available for all of the actions listed in subsection 7–1–714(1), and under subsection 7–1–714(3), review must be based upon an agency record unless no administra-

tive proceedings were ever conducted. In this case, UBA challenges a policy, not the results of an adjudicatory proceeding or other action involving formal record making. A formal record is not necessary for judicial review.

■ Defendants further argue that under the general rules of administrative law, UBA should have objected to the policy at the agency level before bringing its action. They assert that objection at the agency level is a condition precedent to acquiring standing and that "administrative remedies, except in rare instances, must first be exhausted before resort may be had to judicial review." *State v. Higgs,* 656 P.2d 998, 1001 (Utah 1982); *see also S & G, Inc. v. Morgan,* 797 P.2d 1085, 1087 (Utah 1990). However, *Higgs* and *S & G* do not support the assertion that UBA failed to exhaust its administrative remedies. The plaintiffs in both of those cases neglected to participate in agency proceedings held for the purpose of considering their concerns. In *S & G,* this court denied standing to a landowner corporation because it failed to participate in a public hearing held by the state engineer to determine changes in water use. *S & G,* 797 P.2d at 1087. Likewise, in *Higgs* this court denied standing to the state department of social services because it filed for judicial review before completing all of the steps required by statute for conducting an employee grievance proceeding. *Higgs,* 656 P.2d at 999–1000.

The instant case differs from those cases because the Commissioner did not hold a public hearing or any other type of proceeding enabling the UBA or its members to participate in the policy-making process. Furthermore, the applicable statutes do not require UBA to initiate any other type of proceeding at the agency level. Finally, further agency action is not required because the issue at hand is purely one of law and the agency is in no better position than the courts to decide the issue. *See Walker Bank & Trust Co. v. Taylor,* 15 Utah 2d 234, 238, 390 P.2d 592, 595 (1964). Thus, we conclude that we have jurisdiction to hear this case.

### III. OTHER DEFENSES

Finally, defendants assert that UBA's complaint seeks resolution of a nonjusticiable political question and that UBA is barred by laches and estoppel from maintaining this action. We find no merit in either of those assertions.

The summary judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

ZIMMERMAN, C.J., STEWART, A.C.J., DURHAM and WILKINS, JJ., concur.

RUSSON, J., having disqualified himself, does not participate herein; Court of Appeals Judge Michael J. WILKINS, sat.