Lauriat, J.
The plaintiffs, George Wall, Helen Wall, and Lorraine Robinson have appealed from a decision of the City Council of the City of Revere (“the City Council’') to grant a special zoning permit to the defendant National Development Associates of New England (“NDNE"), pursuant to G.L.c. 40A, §17. The plaintiffs have now moved for summary judgment on two grounds. First, they contend that the City Council’s decision should be annulled because the City Council improperly invoked the Rule of Necessity in order to allow all members of the City Council to vote on NDNE’s application for the special permit. Second, the plaintiffs assert that the City Council, in voting to grant the special permit, improperly considered evidence that had been submitted after the City Council had closed the public hearing relating to this matter. The Cify Council has cross-moved for summary judgment. The City Council contends that it properly invoked the Rule of Necessity and that the issue of the City Council’s consideration of additional evidence after the public hearing had closed is barred by the doctrine of claim preclusion because the matter was adjudicated in an earlier Superior Court proceeding. The City Council further asserts that the plaintiffs lack standing to bring their claims under either G.L.c. 40A, §17 or G.L.c. 268A. NDNE has also cross-moved for summary judgment. NDNE asserts that the plaintiffs lack standing under G.L.c. 40A, §17 to bring this claim, that the City Council properly invoked the Rule of Necessity, and that the City Council properly considered additional evidence prior to its vote. NDNE further asserts that, even if the Rule of Necessity was improperly invoked, the City Council’s decision should not be annulled because annulment would adversely affect the interests of the City of Revere and NDNE. For the reasons which follow, the plaintiffs’ motion for summary judgment is allowed. The defendant City Council’s cross-motion for summary judgment is denied. The defendant NDNE’s cross-motion for summary judgment is also denied.
BACKGROUND
For the purposes of this motion, the following facts are undisputed.
NDNE is the developer of an approximately 17 acre property located in Revere, Massachusetts (the “Site”). The Plaintiffs are owners of residential properties located on Kimball Avenue, which abut the Site on the south side. The Site lies within a Residence D (“RD”) Zoning District. Under the Zoning Ordinance of the City of Revere, the operation of retail stores is permitted on up to ten percent of land in RD Zoning Districts by special permit.
On July 9, 1993, NDNE filed an application for a special permit to exceed the ten percent retail use restriction in the RD Zoning District in order to construct a retail shopping center, the Wonderland Marketplace, on the Site.[1] The City Council conducted a public hearing with respect to NDNE’s application on August 30, 1993. The City Council closed the public hearing on August 30, 1993 and tabled any action on NDNE’s application. Thereafter, at the request of the Revere Site Plan Review Committee, NDNE submitted new information and documents in support of its application, including revised site plans with respect to the Site. On December 13, 1993, the City Council voted to grant the special permit based upon the new submissions and revised site plan.
Prior to the December 13, 1993 vote, an issue arose as to whether certain members of the City Council were disqualified from participating in any decision concerning the granting or denial of the special permit due to their relationships with Wonderland Greyhound Park, Inc. (‘Wonderland”). By letter dated April 12, 1993, the Massachusetts State Ethics Commission (“State Ethics Commission”) notified City Councillor Richard M. Penn that, as an employee of Wonderland, he could not participate in any vote regarding the grant of the special permit. However, the State Ethics Commission did not identify any other members of the City Council who were similarly precluded from voting.
*404 On December 9, 1993, the Revere City Solicitor (“City Solicitor”), pursuant to City Council President Arthur F. Guinasso’s request, wrote a letter to the City Council addressing the issue of whether the Rule of Necessity[2] could be invoked with regard to the impending vote of the City Council on the application of NDNE for the special permit. The City Solicitor’s letter stated in relevant part,
It is my understanding that several city councilors may have a conflict of interest or have the appearance of conflict because of their own employment or the employment of a member of their immediate family by Wonderland Greyhound Park, Inc. It is also my understanding that if all of the councilors who have a conflict of interest are disqualified from voting on the Wonderland Marketplace special permit, then the Council cannot act on said permit; because it will not have a sufficient number of councilors who can vote to constitute the two-thirds votes required.
The City Solicitor concluded that “unless a councilor has a direct financial or other interest in Wonderland Marketplace, he or she would not be required to disqualify themselves [sic] leaving the Cify Council powerless to act and the Rule of Necessity could apply.” The City Solicitor further attached to his letter a copy of a State Ethics Commission Fact Sheet addressing the Rule of Necessity, which had been issued, in revised form, in January 1991.[3]
Both the plaintiffs and the defendants agree that, at the time of the City Council’s December 13, 1993 vote, the following City Council members were involved in the following relationships with Wonderland:
(1) Richard M. Penn was an employee of Wonderland.
(2) Arthur Guinasso’s wife, Linda Guisanno, was an employee of Wonderland.
(3) Rita Singer’s daughter-in-law, Mary Singer, was an employee of Wonderland.
(4) Linda Santos Rosa’s husband, George Rosa, was a former employee of Wonderland. George Rosa voluntary terminated his employment with Wonderland on July 11, 1993.
(5) Patsy W. Tata’s son, Mark Tata, was employed by Wonderland.[4]
At the City Council meeting on December 13, 1993, Councilors Richard M. Penn (“Penn”), Linda Santos Rosa (“Santos Rosa"), Rita Singer (“Singer”), and Patsy W. Tata (“Tata”), gave notice to President Arthur Guinasso (“Guinasso”) of their concerns relative to apparent conflicts of interest. Without publicly disclosing the nature of those conflicts, the City Clerk announced at the meeting that the number of City Councilors giving notice of their possible conflicts of interest was four. President Guinasso then announced that, in light of the number of conflicts, the City Council would be unable to vote on the special permit. Thus, Guinasso stated that it would be necessary to invoke the Rule of Necessity so as to enable all members of the City Council to participate in the special permit proceedings.
Each of the eleven members of the City Council then participated in the vote with respect to the special permit on December 13, 1993. Councilors George A. Caporale, DelGrosso, Guinasso, John P. Jordan, Penn, Santos Rosa, Singer and Tata voted to grant the special permit: Councillor A1 Fiore voted not to grant the special permit; and Councilors John Arrigo and Steven A. Colarossi voted “Present.” Under G.L.c. 40A, §9, a special permit issued by an authority requires a two-thirds vote of boards that have more than five members. Thus, it was necessary for at least eight of the eleven members of the City Council to vote in favor of the special permit in order to grant it.
The plaintiffs contend that, pursuant to G.L.c. 268A, § 19(a), only Councilors Penn, Guinasso, and Tata had valid conflicts of interest. As the plaintiffs assert, if only these three councilors had been disqualified from the voting process, the City Council could not have invoked the Rule of Necessity because it would still have had a quorum of eight qualified councilors. Further, the City Council would not have secured the unanimous eight votes in favor of the special permit that were necessary to grant the special permit to NDNE.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial, may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991), accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
*405 I.
The City Council and NDNE contend that the plaintiffs are not “aggrieved person[s]” under G.L.c. 40A, §17 and therefore do not have standing to bring this appeal. As abutters, the plaintiffs enjoy a presumption of “aggrieved person” status. Barvenik v. Board of Aldermen of Newton, 33 Mass.App.Ct. 129, 131 (1992). However, “[o]nce a defendant in a §17 appeal challenges the plaintiffs standing and offers evidence to support the challenge ... the jurisdictional issue is to be decided on the basis of the evidence with no benefit to the plaintiff from the presumption.” Id. “The burden of proof then shifts to the challenged plaintiff who must come forward with ‘specific facts’ to support the assertion of status as an aggrieved person.” Cohen v. Zoning Board of Appeals of Plymouth 35 Mass.App.Ct. 619, 621 (1993), citing Barvenik, supra at 132 n.9.
The plaintiffs have identified several zoning-related concerns: (1) vehicular traffic increases; (2) the potential for litter; (3) an increase in noise; (4) problems with flooding; and (5) a likely diminution in the values of the plaintiffs’ respective properties. To rebut the plaintiffs’ presumption of standing as “aggrieved person[s]” under G.L.c. 40A, §17, NDNE has submitted an affidavit from Michael E. McNeice (“McNeice”), a civil engineer, in which he opines that “traffic increases will have an insignificant impact on operating levels at area intersections and that only marginal increases in vehicle delays will result from Project-related traffic.” (Aff. of Michael E. McNeice, ¶10.) Mc-Neice further states that the project will have “significant positive impacts on existing wetland and drainage conditions and will provide for more effective drainage . . .” Id. at ¶17.
However, the plaintiffs have submitted an affidavit from Harvey A. Remis (“Remis”), a Certified General Real Estate Appraiser, who after reviewing McNeice’s report, concluded that the project would increase the use of Kimball Avenue as a “cut through,” which would cause a decline in the fair market value of the plaintiffs’ properties. (Aff. of Harvey A. Remis, 19(a).)[5] Further, Remis states that the effects of the noise and the lighting that would be caused by the development of the project, despite NDNE’s best efforts to limit these consequences, would similarly cause a decline in the fair market value of the plaintiffs’ properties. Id. at l[9(b).
At the summary judgment stage, standing requires only a factual showing of “perceptible harm.” Cohen, supra at 621, quoting Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136-37, 2139 (1992). A plaintiff “must provide specific evidence demonstrating a reasonable likelihood that the granting of the special permit will result, if not in a diminution of the value of his property, at least in his property or legal rights being more adversely affected by the activity authorized by the permit than [] they are by present uses and activities . . .” Barvenak, supra at 133 (emphasis added). The affidavit of Remis, a licensed real estate appraiser, offers more than conjecture and hypothesis regarding the effect of the development on the plaintiffs’ property values. Compare Cohen, supra at 623 (“[T]he general and conclusory allegations of the affidavit cannot be transformed by inference into genuine triable issues”). Thus, the plaintiffs have demonstrated at least a reasonable likelihood that the development of the project will have an adverse impact on the plaintiffs’ property values. Accordingly, the court concludes that the plaintiffs have standing as “aggrieved person[s]” under G.L. 40A, §17 to appeal the decision of the City Council granting NDNE’s special permit.
II.
The plaintiffs assert that certain City Councilors violated the conflict of interest laws by wrongfully disqualifying themselves in order to invoke the Rule of Necessity. G.L.c. 268A sets forth the conflict of interest laws to which public officials and employees are bound. G.L.c. 268A, §21{a) states:
In addition to any other remedies provided by law, any violation of sections two, three, eight, or sections fifteen to twenty, inclusive, which has substantially influenced the action taken by any municipal agency in any particular matter shall be grounds for avoiding, rescinding or cancelling the action on such terms as the interest of the municipality and innocent persons require.
G.L.c. 268A, §21(a). As a preliminary matter, the Cify Council contends that the plaintiffs lack standing under G.L. 268A, §21(a) to maintain a suit alleging violation of the conflict of interest laws by the City Council.
In Everett Town Taxi v. Board of Aldermen of Everett, 366 Mass. 534 (1974), the Supreme Judicial Court held that there could “be no doubt about the purpose of [G.L.c. 268A, §21(a)], enacted as part of‘comprehensive legislation . . . [t]o strike at corruption in public office, inequality of treatment of citizens and the use of public office for private gain.’ ” Id., quoting Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650, p. 18. The court held that “to deny a private right of action under the statute would in some cases be to deprive the public of the protection conferred on it by the Legislature.” Everett Town Taxi, Inc., supra at 536.
Although the City Council concedes that a private action may be maintained under G.L.c. 268A, §21(a), it contends that the plaintiffs have no relation to the alleged violations and therefore may not bring suit. However, the plaintiffs have demonstrated a reasonable likelihood that their property values may decline as a result of the City Council’s decision to grant NDNE a special permit. In Everett Town Taxi, Inc., supra, the Court found that taxi companies, who sought the *406 revocation of the taxicab licenses of certain of their competitors, were proper parties to a suit alleging violations of G.L.c. 268A. The plaintiffs’ interest in the present case is no less compelling than the interest of a business in preventing its competitor from improperly obtaining a license. Thus, the court concludes that the plaintiffs have standing under G.L.c. 268A, §21(a) to maintain a suit alleging violation of the conflict of interest laws by the Ciiy Council.
The plaintiffs contend that the City Council improperly invoked the Rule of Necessity in order to allow all members of the City Council to vote on NDNE’s application for a special permit. The Rule of Necessity is properly invoked if the disqualification of an administrative board member, because of the member’s possible bias or prejudice, would deprive the administrative board of the requisite number of members necessary to take a valid affirmative vote. Georgetown v. Essex Counts Retirement Board, 29 Mass.App.Ct. 272, 277-78 (1990). The most recent version of the State Ethics Commission Fact Sheet, upon which both parties rely, states that the Rule of Necessity is a rule of last resort and that “(e]ach disqualified member who wishes to participate under the Rule of Necessity must first disclose publicly the facts that created the conflict.”
G.L.c. 268A, §19(a) describes the scenarios which present a public official with a valid conflict of interest. That statute states:
[A] municipal employee who participates as such an employee in a particular matter in which to his knowledge he, his immediate family or partner, a business organization in which he is serving as officer, director, trustee, partner or employee, or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest, shall be punished by a fine of not more than three thousand dollars or by imprisonment for not more than two years, or both.
G.L.c. 268A, §19(a) (emphasis added). G.L.c. 268A, §1 defines “Immediate family” as “the employee and his spouse, and their parents, children, brothers and sisters.”
Thus, under the plain language of the statute, only Penn, who was an employee of Wonderland, Guinasso, whose wife was an employee of Wonderland, and Tata, whose son was an employee of Wonderland, had valid conflicts of interest.[6] The City Council contends, however, that under G.L.c. 268A, §23(b)(3), entitled “Standards of Conduct," Singer and Santos Rosa were required to disqualify themselves in order to avoid the appearance of a conflict of interest. G.L.c. 268A, §23(b)(3) provides:
No current officer or employee of a state, county or municipal agency shall knowingly, or with reason to know: . . . act in a manner which would cause a reasonable person, having knowledge of the relevant circumstances, to conclude that any person can improperly influence or unduly enjoy his favor in the performance of his official duties, or that he is likely to act or fail to act as a result of kinship, rank, position or undue influence of any party or person. It shall be unreasonable to so conclude if such officer or employee has disclosed in writing to his appointing authority or, if no appointing authority exists, discloses in a manner which is public in nature, the facts which would otherwise lead to such a conclusion.
G.L.c. 268, §23(b)(3). The City Council’s assertion suggests that G.L.c. 268A, §23(b)(3) expands the reach of G.L.c. 268A, § 19(a) and, thus, allows a public official to disqualify himself or herself at will whenever there is a glimmer of conflict. However, if this interpretation were accurate, the narrow guidelines in G.L.c. 268A, § 19(a), and the strict definition of “immediate family” in G.L.c. 268A, §1, would be rendered meaningless. A statute should not “be construed in such a way as to make a nullity of pertinent provisions.” Manning v. Boston Redevelopment Authority, 400 Mass. 444, 453 (1987), citing Insurance Rating Bd. v. Commissioner of Ins., 356 Mass. 184, 189 (1969). Further, G.L.c. 268A, §21(a) provides no method for enforcing §23, which suggests that the Legislature did not intend §23 to impose specific prohibitions on the conduct of public officials, but rather to provide general guidelines. Finally, the advisory letter written by Michelle R. Levy, Staff Counsel to the State Ethics Commission, upon which the defendants rely, exclusively references G.L.c. 268A, §19 in its discussion of the conflict of interest laws applicable to public officials. (Exs. E and F to Aff. of Kevin P. O’Flaherty.) Thus, the court concludes that G.L.c. 268, §19(a) is the appropriate provision defining the scope of the conflicts of interest which public officials must avoid.
Further, even assuming arguendo that the councilors had properly disqualified themselves pursuant to G.L.c. 268A, §23(b)(3), the disqualified councilors had a duty to publicly disclose their perceived conflicts at the December 13, 1993 meeting, both under this statute and pursuant to the guidelines provided by the State Commission of Ethics. The certified minutes of the December 13, 1993 meeting state that Councilors Tata, Singer, Santos Rosa, and Penn gave notice to President Guinasso of their concerns relative to apparent conflicts of interest. (Ex. B to Aff. of Helen Wall.) However, President Guinasso never disclosed the facts from which these conflicts arose. Id. Rather, the City Clerk merely announced that “the number of City Councilors giving notice of their possible conflict of interest is four.” Id. Consequently, President Guinasso invoked the Rule of Necessity in order to allow the entire City Council to vote on the NDNE’s permit. Id. The City Council’s failure to disclose the nature of the councilor’s conflicts prior to the vote left the plaintiffs with no opportunity to challenge the purported conflicts at the meeting.[7]
*407 The defendants contend that, even if there was a procedural violation of G.L.c. 268A, §19(a) and the Rule of Necessity was not properly invoked, the council’s decision should not be annulled because annulment would adversely affect the interests of the City of Revere and NDNE. This contention merits little consideration. In this case, the City Council was able to affect the outcome of a vote by allowing four councilors to disqualify themselves, without publicly disclosing the facts justifying their disqualification and, more importantly, without any statutory support for their disqualification, and by permitting an interested President to improperly invoke the Rule of Necessity in order to allow all members, interested and disinterested alike, to vote on the granting of the special permit to the NDNE. The City Council’s conduct in this matter is in contravention of the law, and the results of this conduct have had extreme consequences for the plaintiffs. Most importantly, if the City Council had properly complied with the provisions of G.L.c. 268A, in light of the actual votes cast on December 13, 1993, NDNE would likely not have received the special permit. NDNE asserts, however, that this court should not nullify the vote granting the special permit because NDNE perceives its development to be beneficial to the City of Revere and, of course, in its own best interest.
The determination of the value of NDNE’s development to the City of Revere is thankfully not a matter for this court. Rather, this court’s sole concern is to ensure that the City Council’s decision was the result of fair and lawful procedure. Because the court cannot reach this conclusion, the vote of the City Council on December 13, 1993 which granted a special permit to NDNE is annulled pursuant to G.L.c. 40A, §17 and G.L.c. 268A, §21(a). Having determined that the City Council violated the provisions of G.L.c. 268A and improperly invoked the Rule of Necessity, the court need not reach the issue of the City Council’s consideration of additional evidence after the public hearing had closed.
ORDER
For the foregoing reasons, the Plaintiffs’ Motion for Summary Judgment is ALLOWED. The Defendants,’ Arthur G. Guinasso, et al. (City Council) Cross Motion for Summary Judgment" is DENIED. The Defendant National Development Associates of New England, Inc.’s Cross-Motion for Summary Judgment is DENIED. It is hereby ORDERED and DECLARED that the December 13, 1993 decision of the City Council granting NDNE a special permit is annulled.

In early 1993, NDNE entered into an agreement for the purchase of the Site. The sale, however, is conditioned upon the issuance of a special permit to NDNE.

If certain members of an administrative board are disqualified so as to deprive the administrative board of a quorum or some other number of members required to take a valid affirmative vote, the administrative board can use the Rule of Necessity to permit the participation of the disqualified members in order to allow the board to act.

Tyhe Fact Sheet on the Rule of Necessity had been further revised in February 1993.

In its memorandum, the City Council also suggests that Councillor Joseph DelGrosso (“DelGrosso”) may have had a conflict because his ex-wife worked for Wonderland. However, the City Council concedes that DelGrosso’s appearance of conflict may not be “so substantial as to be deemed likely to affect his vote.” Because the defendants have not cited, nor has the court found, any authority which holds that the activities of a public official’s ex-spouse can create a conflict of interest for that public official, the court disregards this seemingly specious argument by the City Council.

Remis estimated that the operation of the proposed 24-hour Stop & Shop alone would generate 6,770 to 8,775 new vehicle trips per day. (Aff. of Harvey A. Remis, 319(d).)

NDNE contends that the employment of Rita Singer’s daughter-in-law, Mary Singer, with Wonderland constituted a conflict of interest pursuant to G.L.c. 268A, §19(a). However, the definition of “immediate family” is unambiguous and does not include either “in-laws” or non-lineal relationships. Further, there is nothing in the language of G.L.c. 268A, §19(a) which would suggest that George Rosa’s former employment with Wonderland would disqualify Linda Santos Rosa.

The court also notes that President Guinasso, whose wife worked for Wonderland, not only failed at the Council meeting to disclose publicly his own clear conflict of interest, but further, he presided over the meeting and vote of the Council. Under the mandate of G.L.c. 268A, §19(a), Guinasso should not have participated in this matter at all.