465 Mass. 305 (2013)                                                305

Leder *v.* Superintendent of Schools of Concord & Concord-Carlisle Regional School District.

PAUL LEDER[1] *vs.* SUPERINTENDENT OF SCHOOLS OF CONCORD
& CONCORD-CARLISLE REGIONAL SCHOOL DISTRICT
& others.[2]

Middlesex. February 7, 2013. - May 31, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*School and School District. School and School Committee,* Superintendent of
schools, Regional school district. *Municipal Corporations,* Contracts.
*Contract,* Bidding for contract, Regional school district. *Injunction. Practice,
Civil,* Preliminary injunction. *State Ethics Commission. Conflict of Interest.*

In a civil action brought under G. L. c. 268A, § 21 (*a*), as appearing in St.
2009, c. 28, § 80, seeking rescission of an action taken by a municipal
agency (a regional school district) based on an alleged violation of G. L.
c. 268A, § 23, the judge properly denied the plaintiff's motion for a pre-
liminary injunction, where the State Ethics Commission had made no find-
ing of such a violation, and where the municipal agency had not requested
rescission. [308-313]

CIVIL ACTION commenced in the Superior Court Department on
August 15, 2011.

A motion for preliminary injunctive relief was heard by *Garry
V. Inge*, J.

A petition for interlocutory review was heard in the Appeals
Court by *Elspeth B. Cypher*, J. The Supreme Judicial Court on
its own initiative transferred the case from the Appeals Court.

*Kwabena B. Abboa-Offei* for the plaintiff.

*Adam Simms* for the defendants.

*Andrew P. Botti & David K. Moynihan*, for David K. Moyni-
han & another, amici curiae, submitted a brief.

*Martha Coakley*, Attorney General, & *Deirdre Roney*, Special

[1]Doing business as Spencer Brook Strings.

[2]John Flaherty, Matthew Wells, Robert Seely, Wade Hendricks, and Anna
Anderson. The defendant John Flaherty is the deputy superintendent for
finance and operations in the school district. The defendant Anna Anderson is
an orchestra teacher in the school district. The defendant Matthew Wells is a
business analyst for the school district. The defendants Wade Hendricks and
Robert Seely are instrumental music teachers in the school district.

Assistant Attorney General, for State Ethics Commission, amicus curiae, submitted a brief.

GANTS, J. The issue on appeal is whether, under G. L. c. 268A, § 21 (*a*), as appearing in St. 2009, c. 28, § 80, a party may obtain declaratory or injunctive relief rescinding an action taken by a municipal agency based on an alleged violation of G. L. c. 268A, § 23, where the State Ethics Commission (commission) has made no finding of a violation and where the municipal agency has not requested this relief. We conclude that a finding of a violation of § 23 by the commission after an adjudicatory proceeding and a request for rescission by the municipal agency are both prerequisites to the filing of a complaint seeking rescission under G. L. c. 268A, § 21 (*a*). Because neither prerequisite has been met in this case, we affirm the denial of the plaintiff's motion for a preliminary injunction and remand the case to the Superior Court with instructions to dismiss the complaint.[3]

*Background.* The facts are not materially in dispute. The plaintiff, Paul Leder, doing business as Spencer Brook Strings (SBS), operates a musical instrument sale and rental business that rents string instruments to students in various school districts throughout Massachusetts, including the Concord public schools and the Concord-Carlisle Regional School District (collectively, school district). Since 2003, SBS has rented string instruments to students who participated in the school district's music program. From 2003 to 2009, the school district held an "instrumental rental night" at the middle school where parents could choose among various vendors, including SBS, for rental instruments for their children. In the 2009-2010 school year, the school district did not hold an instrumental rental night but instead published on its Web site a list of the various musical instrument vendors and invited parents to contact the vendor from whom they wanted to rent.

In the spring of 2011, however, the school district invited vendors of string instruments to bid to rent instruments to the parents of children in the school district, and asked prospective vendors to provide with their bids, among other information, a detailed explanation of their rental program and their rental

---

[3]We acknowledge the amicus briefs submitted by the State Ethics Commission and by David K. Moynihan and Lia Zulilian-Moynihan.

fees. SBS alleges that it submitted the lowest bid for rental fees. However, according to the school district, one of SBS's references reported that the quality of service provided by SBS was inconsistent and that there were customer service issues. The school district selected the next lowest bidder, Music and Arts (M&A), as the winning bid, after receiving positive reports from all its references. As a result, the school district published on the Web sites of two schools a letter with M&A's logo that advised parents that M&A "is the music rental company for Concord Public Schools," assured parents that M&A "will provide quality rental instruments," gave step-by-step instructions on how to rent an instrument using M&A's Web site, and informed parents that "[s]hould you choose NOT to rent from [M&A] you are agreeing to take the instrument rental, maintenance, purchase of lesson book and supplies, and repair into your own hands."[4]

In August, 2011, the plaintiff filed a verified complaint alleging that, by providing M&A with their "endorsement" and "fail[ing] to advertise SBS in the materials that [they] published for parents of children who participated in the music program in the same way that [they] advertised M&A," the defendants had used their official positions, see note 2, *supra*, to secure for M&A unwarranted privileges that are of substantial value and not available to similarly situated individuals, in violation of G. L. c. 268A, § 23 (*b*) (2) (ii).[5,6] The complaint sought declaratory and injunctive relief, and was accompanied by a motion for

---

[4]After the plaintiff filed this complaint, the Concord public schools and the Concord-Carlisle School District (collectively, school district) sent an electronic mail message to parents advising them that "[f]amilies who have had a satisfactory instrument rental experience with another vendor, and feel comfortable assuming responsibility for arranging for maintenance, purchase of a lesson book and supplies, and repair of the instrument, may choose to continue that relationship."

[5]The plaintiff's complaint also alleged that the defendants acted in a manner that would cause a reasonable person to conclude that they can be improperly influenced in the performance of their official duties, in violation of G. L. c. 268A, § 23 (*b*) (3), but the plaintiff did not argue this ground in his motion for preliminary injunction, which is the motion before us on appeal.

[6]General Laws c. 268A, § 23 (*b*) (2) (ii), as appearing in St. 2009, c. 28, § 81, provides:

"No current officer or employee of a state, county or municipal agency

preliminary injunction that, among other relief, sought to enjoin the defendants from organizing any string rental nights without SBS's participation and publishing any letters or materials to parents that promote a competitor of SBS, and sought an order requiring the defendants to remove any online materials that indorse or promote M&A as the official rental company of the school district.

The judge denied the plaintiff's motion for a preliminary injunction. The judge declared that G. L. c. 268A was enacted "to prevent public officials from favoring one business over another," but concluded that the plaintiff lacked standing because, as a musical instrument rental company, it "is clearly not part of a regulated industry." The plaintiff appealed from the denial of preliminary injunctive relief pursuant to G. L. c. 231, § 118. After a single justice of the Appeals Court denied the petition for review, the case was entered in the Appeals Court; we transferred the plaintiff's appeal to this court on our own motion.[7]

*Discussion.* In 1962, the Legislature enacted G. L. c. 268A, § 21, as part of "comprehensive legislation . . . [to] strike at corruption in public office, inequality of treatment of citizens and the use of public office for private gain." See *Everett Town Taxi, Inc.* v. *Aldermen of Everett*, 366 Mass. 534, 536 (1974) (*Everett Town Taxi*), quoting Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650, at 18. The original text of § 21 (*a*), inserted by St. 1962, c. 779, § 1, remained unchanged until 2009 and provided:

> "In addition to any other remedies provided by law, any violation of section two, three, eight, or sections fifteen to twenty, inclusive, which has substantially influenced the action taken by any municipal agency in any particular matter shall be grounds for avoiding, rescinding or cancelling the action on such terms as the interest of the municipality and innocent third persons require."

shall knowingly, or with reason to know . . . use or attempt to use such official position to secure for such officer, employee or others unwarranted privileges or exemptions which are of substantial value and which are not properly available to similarly situated individuals."

[7]The defendants filed a motion to dismiss the complaint, but the motion judge has yet to rule on this motion because he granted the parties' joint motion to stay the proceedings pending our decision.

When § 21 (a) was enacted, there was no commission or other comparable entity to enforce the new ethics laws. Instead, the 1962 legislation authorized a city or town to bring a civil action "against any person who has acted to his economic advantage in violation of said sections two, three, eight and fifteen to twenty, inclusive" and to "recover damages in the amount of such economic advantage or five hundred dollars, whichever is greater." G. L. c. 268A, § 21 (b), inserted by St. 1962, c. 779, § 1.[8]

In 1974, we considered whether the Legislature intended § 21 (a) to include a private right of action and, if so, whether a taxicab company had standing to file a civil action under § 21 (a) against a city's public officials to challenge the issuance of licenses to a competitor to operate taxicabs and taxi stands in that city. *Everett Town Taxi, supra* at 534-535. We noted that the "language of § 21 (a) is neutral on the matter, simply setting out the remedy without describing those to whom it is available." *Id.* at 535-536. "At the least there is nothing in the language to preclude a private action; if anything, the specific reference to actions by the city or town for restitution in § 21 (b) leads to the inference that no such limitation is present in § 21 (a)." *Id.* at 536. We concluded that we needed to construe § 21 (a) to permit a private right of action "to effectuate fully the statutory purpose" of attacking public corruption. *Id.* We stated:

"In light of these objectives it is apparent that, if a right of

[8]The Legislature, in 1978, created the State Ethics Commission (commission) and, in 1986, made it the "primary civil enforcement agency for violations of all sections of [G. L. c. 268A]." See G. L. c. 268B, §§ 2 & 3 (i), inserted by St. 1978, c. 210, § 20, and as amended by St. 1986, c. 557, § 194. In 1982, the Legislature struck G. L. c. 268A, § 21 (b), and replaced it with a provision that allowed "[t]he state ethics commission, the district attorney for that district, or the city or town or state" to bring a civil action "against any person who has acted to his economic advantage in violation of [G. L. c. 268A, §§ 2,3, 8, and 15-20], inclusive, and [to] recover damages for the city or town in the amount of such economic advantage or [$500], whichever is greater." G. L. c. 268A, § 21 (b), as appearing in St. 1982, c. 612, § 13. Where there has been no final judgment of conviction or acquittal of that violation, these same parties may recover additional damages for the city or town in an amount not to exceed twice the amount of the economic advantage, but a judgment for these additional damages would bar any criminal prosecution for the same violation. *Id.*

action is denied to all private parties, there would be a frustration of the statute. . . . Were we to construe § 21 (*a*) as providing an exclusively public remedy so that the sole parties eligible to move under § 21 (*a*) were municipal authorities, the result would be that in a municipality where those authorities were the principal parties in interest there would be no movement at all. Thus to deny a private right of action under the statute would in some cases be to deprive the public of the protection conferred on it by the Legislature."

*Id.*

We noted that the existence of a private right of action did not mean that every aggrieved business competitor had standing to bring such an action. *Id.* at 538. We recognized the general rule that "the mere fact that a plaintiff may suffer from business competition is not a sufficient injury to give him standing to sue." *Id.*, and cases cited. But we held that the aggrieved business competitor in that case had standing to sue because the general rule did not apply to competitors in a regulated industry, such as the taxicab industry, "who are attempting to challenge governmental action threatening their competitive position."[9] *Id.*, and cases cited. Even where a plaintiff had standing to sue and even where there was a violation of one of the statutes enumerated in § 21 (*a*), we recognized that rescission of the governmental action may not always be appropriate. See *id.* at 537 ("fact that the municipal authorities were aware of the conflict of interest, but chose to ratify the action may be entitled to some weight where the action cannot be rescinded without detriment to the municipality").

In 2009, as part of "An Act to improve the laws relating to campaign finance, ethics and lobbying" (act), the Legislature significantly revised various provisions of G. L. c. 268A, including G. L. c. 268A, § 21. The Legislature rewrote § 21 (*a*) to add the italicized language:

"In addition to any other remedies provided by law, *a*

---

[9] The judge relied on this general rule of standing to find that the plaintiff in this case had no standing to sue because the rental of musical instruments is not a regulated industry.

> *finding by the [state ethics] commission pursuant to an adjudicatory proceeding that there has been* any violation of sections 2, 3, 8, 17 to 20, inclusive, *or section 23,* which has substantially influenced the action taken by any municipal agency in any particular matter, shall be grounds for avoiding, rescinding or canceling the action *of said municipal agency upon request by said municipal agency* on such terms as the interests of the municipality and innocent third persons require" (emphasis added).

St. 2009, c. 28, § 80. This revision not only added § 23 to the list of violations that may justify rescission but also added two prerequisites to the filing of an action for rescission: a finding of a violation of one of the enumerated sections by the commission pursuant to an adjudicatory proceeding, and a request for rescission by the municipal agency that took the action that the suit seeks to rescind.

The act also made significant amendments to § 21 (*b*), which authorized the commission itself, on a finding after an adjudicatory hearing that a person acted to his economic advantage in violation of G. L. c. 268A, § 2, 3, 8, 17-20, or 23, to order rescission of a municipal action pursuant to § 21 (*a*), to order the violator to pay to the commission on behalf of the municipality damages in the amount of the economic advantage, not to exceed $25,000, and to order restitution to an injured third party. G. L. c. 268A, § 21 (*b*), as appearing in St. 2009, c. 28, § 80.[10] A consequence of these amendments to § 21 (*b*) is that rescission of an action by a municipal agency may be ac-

---

[10]The full text of G. L. c. 268A, § 21 (*b*), as appearing in St. 2009, c. 28, § 80, reads:

> "In addition to the remedies set forth in subsection (*a*), the commission may, upon a finding pursuant to an adjudicatory proceeding that a person has acted to his economic advantage in violation of sections 2, 3, 8, 17 to 20, inclusive, or section 23, may issue an order (1) requiring the violator to pay the commission on behalf of the municipality damages in the amount of the economic advantage or $500, whichever is greater; and (2) requiring the violator to make restitution to an injured third party. If there has been no final criminal judgment of conviction or acquittal of the same violation, upon receipt of the written approval of the district attorney, the commission may order payment of additional damages in an amount not exceeding twice the amount of the economic advantage or $500, and payment of such additional damages

complished by the commission, without the need to bring a civil action, after a finding of violation of at least one of the enumerated sections in an adjudicatory proceeding, but only on the request of that municipal agency, while other remedies are available without such request.

It is interesting to note that the Legislature did not impose the two prerequisites of an adjudicatory finding by the commission and the request of the governmental entity when it rewrote G. L. c. 268A, § 9 (*a*), which provides for rescission of the actions of a State agency, and G. L. c. 268A, § 15 (*a*), which provides for rescission of the actions of a county agency. See St. 2009, c. 28, §§ 70 & 75.[11] The only change to these statutes was to include § 23 among the sections for which violations could trigger rescission. See *id.* The legislative history sheds little light on the reasons for imposing these prerequisites on actions brought under § 21 (*a*) but not on actions brought under § 9 (*a*) or § 15 (*a*). But the commission's annual reports in 2007 and 2008 reflected that more than seventy per cent of the complaints alleging conflict of interest violations involved municipal employees, and more than sixty-one per cent of the complaints

---

shall bar any criminal prosecution for the same violation. The maximum damages that the commission may order a violator to pay under this section shall be $25,000. If the commission determines that the damages authorized by this section exceed $25,000, it may bring a civil action against the violator to recover such damages."

[11]General Laws c. 268A, § 9 (*a*), as appearing in St. 2009, c. 28, § 70, provides:

"In addition to any other remedies provided by law, any violation of sections 2 to 8, inclusive, or section 23 which has substantially influenced the action taken by any state agency in any particular matter, shall be grounds for avoiding, rescinding or canceling the action on such terms as the interests of the commonwealth and innocent third persons shall require."

Similarly, G. L. c. 268A, § 15 (*a*), as appearing in St. 2009, c. 28, § 75, provides:

"In addition to any other remedies provided by law, a violation of section 2, 3, 8, or sections 11 to 14, inclusive, or section 23 which has substantially influenced the action taken by any county agency in any particular matter, shall be grounds for avoiding, rescinding, or canceling the action on such terms as the interests of the county and innocent third persons shall require."

were dismissed by the commission, either because they were frivolous or otherwise did not justify continued investigation, or because they failed to allege a violation of G. L. c. 268A.[12] The Legislature reasonably could have decided that cash-strapped municipal agencies should not be burdened with the cost of defending civil actions seeking rescission of their actions where there has been no finding by the commission of a violation of one of the enumerated conflict of interest laws and where the municipal agency itself does not seek to rescind the action, especially where, with the amendments to § 21 (b), the commission may order restitution to an injured third party without the approval of the municipal agency.

*Conclusion.* Here, the plaintiff does not allege either that the commission has made a finding of a violation of § 23 or that the school district has requested rescission of its agreement with M&A. Without these prerequisites, the plaintiff cannot prevail in his motion seeking preliminary injunction and cannot continue to prosecute this action. Therefore, we not only affirm the denial of the plaintiff's motion for preliminary injunction, albeit on different grounds, but also remand the case to the Superior Court with instructions to dismiss the action.[13]

*So ordered.*

---

[12]See Massachusetts State Ethics Commission, Fiscal Year 2008 Annual Report, at 11 (2008); Massachusetts State Ethics Commission, Fiscal Year 2007 Annual Report, at 11 (2007).

[13]In light of this ruling, we need not decide whether, if these prerequisites were satisfied, the plaintiff had standing to bring a private right of action to seek rescission.